UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-20555-CR-GAYLES

UNITED STATES OF AMERICA

v.

ANTHONY BOSCH,

    Defendant.
_____/

### DEFENDANT'S *UNOPPOSED* MOTION TO REINSTATE BOND

The Defendant, ANTHONY BOSCH, through undersigned counsel, respectfully moves to reinstate bond, pursuant to 18 U.S.C. § 3142, stating:

#### PROCEDURAL AND FACTUAL BACKGROUND

1. On August 5, 2014, the government filed a single-count information, charging the defendant with a conspiracy to possess performance enhancing drugs ("PED"), a schedule III controlled substance. [D.E. 1]. No minimum mandatory sentence applies. Without the benefit of any reduction for his substantial assistance, Mr. Bosch faces a sentencing guideline range of approximately 41 to 51 months of incarceration.

2. Well prior to the filing of the Information, Mr. Bosch began fully cooperating with Major League Baseball ("MLB"). As requested by MLB, he appeared at proceedings in New York and provided substantial and meaningful assistance to MLB resulting in the suspension of a record number of players. After completing that cooperation, Mr. Bosch began cooperating with the United States Attorney's Office ("USAO") and the Drug Enforcement Administration ("DEA"). During the course of that cooperation, the defendant attended nearly a dozen debriefing sessions as directed by the USAO and the DEA. He was well aware of the

investigation against him, including the nature of the allegations.  He never sought to flee, and appeared as directed.

3. On August 5, 2014, as directed by federal authorities, Mr. Bosch surrendered himself to the DEA.   [D.E. 7].

4. At Mr. Bosch's first appearance on August 5, 2014, the government agreed to a personal surety bond.   There was no evidence or argument presented that Mr. Bosch was either a danger to the community or a potential flight-risk.

5. The Court approved the $100,000 Personal Surety Bond co-signed by Mr. Bosch's parents, who are long-time Miami residents.   The bond included the following special conditions:

   a. Surrender all passports and travel documents, if any, to the Pretrial Services Office and not to obtain any travel documents during the pendency of the case;
   b. Report to Pretrial Services as directed;
   c. Submit to substance abuse testing and/or treatment; and
   d. Refrain from possessing a firearm, destructive devise or other dangerous weapons.
   e. Mr. Bosch was also permitted to travel within the U.S. upon his notification and the approval of Pretrial Services.

[D.E. 11 at 1-2].

6. After hearing oral argument on October 6, 2014, the Court revoked Mr. Bosch's bond and remanded him into federal custody, granting leave for the filing of a written Motion to Reinstate Bond.

**UNWAVERING COMPLIANCE WITH THE BOND CONDITIONS**

7. Mr. Bosch has complied with all bond conditions.

8. He surrendered his passport to Pretrial Services ("PTS") on August 5, 2014.

9. Mr. Bosch surrendered his firearm.   In fact, on August 29, 2014, PTS received a notarized firearm affidavit verifying that Mr. Bosch's firearm was removed from his residence on

August 5, 2014, as directed by PTS.

10. Mr. Bosch has also proven that he understands and will continue to comply with the restrictions on his travel within the continental United States. He traveled to Raleigh, North Carolina on August 27, 2014, with no reported problems from PTS or the government.

11. Also, in accordance with his bond conditions, Mr. Bosch has faithfully and consistently reported to PTS as directed.

12. Accordingly, there is no evidence that the defendant is a risk of flight. Indeed, neither the government nor PTS contend otherwise. Mr. Bosch has substantial ties throughout South Florida. His parents co-signed the initial personal surety bond. Mr. Bosch has five children and two grandchildren who reside within the District. The ages of his children range from 27 years to 4 months. Mr. Bosch has a number of other family members who live in South Florida. Lastly, there is absolutely no evidence of hidden sums of wealth, foreign travel, or anything else that would cause concern by the government or PTS.

13. Significantly, there is no evidence that Mr. Bosch is a danger to the community. Mr. Bosch has no prior criminal history. The single-count Information charges the distribution of Schedule III performance enhancing drugs such as testosterone. No minimum mandatory sentence applies.

14. There is no allegation of Mr. Bosch being involved in any type of violence. There is no evidence of injury. Without any benefit as a result of his cooperation, Mr. Bosch likely faces a sentencing guideline range of about 41 to 51 months incarceration. There is simply no evidence that Mr. Bosch is a danger to the community.

### DRUG TESTING

15. As a condition of his bond, Mr. Bosch submitted his initial drug test to PTS on

August 6, 2014, as required.

16. Mr. Bosch's next appointment with PTS was scheduled for August 14, 2014. At the August 14, 2014 intake interview, Mr. Bosch honestly disclosed to the PTS office his struggles with substance abuse. He readily suggested to PTS that his August 6 drug test would likely return positive for the presence of cocaine. Further, given his experience and background, he suggested that it would likely take one or more drug tests over the course of several weeks for his body to flush the presence of cocaine. PTS ordered drug testing twice weekly.

17. After being arrested on August 5, and being granted bond that same day, Mr. Bosch submitted to thirteen (13) drug tests at the U.S. Probation Office. Out of the thirteen tests only the August 6th and 18th were positive for trace amounts of cocaine, consistent with the residual presence of the prior drug use that he disclosed to PTS. Thereafter, Mr. Bosch submitted negative urine specimens on August 21st and 25th, as well as, September 2nd, 5th, 12th, 16th, 19th, 25th, 26th, and 30th.

18. As a result of the August 6th and 18th drug tests, PTS filed a report with the Court on September 22, 2014 (hereinafter, "PTS Report"). PTS neither sought the revocation of Mr. Bosch's bond nor a modification of its conditions. Indeed, the PTS supervisor indicated "***This officer is respectfully recommending no judicial action be taken to afford the defendant the opportunity to participate in private outpatient substance abuse treatment.*** In addition, the defendant will provide documentation to confirm compliance with the required treatment." (emphasis added).

19. The government was also served with the PTS Report. Notably, it did not move for modification of Mr. Bosch's bond conditions or revocation of his bond.

Case 1:14-cr-20555-DPG Document 25 Entered on FLSD Docket 10/07/2014 Page 5 of 9

**PRIVATE OUTPATIENT SUBSTANCE ABUSE TREATMENT**

20. Consistent with his honest disclosure to PTS, Mr. Bosch voluntarily sought the services of a licensed professional health counselor to assist with his substance abuse treatment.

21. Since September 3, 2014, Mr. Bosch has been under the care of a noted South Florida expert for drug and alcohol counseling. The name and details of the counselor and treatment circumstances have been disclosed to PTS.

22. In addition to the PTS drug testing, Mr. Bosch was required to submit to additional bi-weekly drug test by his private counselor. Each test was also negative for drug use.

23. In compliance with PTS direction, Mr. Bosch's counselor submitted to PTS on October 3, 2014, the required documentation confirming his client's compliance, indicating that Mr. Bosch "fully participates" at his scheduled meetings. In revoking Mr. Bosch's bond, the Court recounted that Mr. Bosch failed to appear for a scheduled appointment on September 18, 2014. On that day, Mr. Bosch was meeting with his attorney. This was explained to Mr. Bosch's counselor, but was omitted from his report.

**APPEARANCE IN COURT**

24. Again, consistent with his continued compliance with this Court's order and his bond conditions, Mr. Bosch has appeared at all required court hearings, specifically the September 3, 2014 calendar call and the October 6, 2014 show cause hearing. There is simply no indication that Mr. Bosch will violate his requirement to appear.

**THE SEPTEMBER 30, 2014 TOXICOLOGY REPORT**

25. During the October 6, 2014 hearing, for the first time, U.S. Probation submitted a two-page "toxicology report" to the Court. Relying exclusively on this report, PTS suggested that Mr. Bosch's positive urinalysis on August 18, 2014 could not have been residual in nature as

Lewis Tein PL
ATTORNEYS AT LAW
3059 GRAND AVENUE, SUITE 340, COCONUT GROVE, FLORIDA 33133

contended by the defense. Notably, PTS informed the undersigned counsel of this report just minutes before the hearing. The defense had never been supplied a copy of the report. The Court stated that it was relying on the report, in part, in revoking bond.

26. A careful review of the September 30, 2014 report, however, contains glaring assumptions and inconsistent statements. Indeed, the report contradicts its own conclusion and supports fully the defense argument that any trace amounts of cocaine found in Mr. Bosch's urine on August 18th were strictly residual.

27. The September 30, 2014 report concludes that Mr. Bosch "reused cocaine prior to the collection on 8/18/14."

28. This conclusion is based on "the lack of significant decrease in the normalized level of drug present in the urine specimen collected on 8/18/14." However, the report reveals that the normalized level of drug present in the August 18, 2014 specimen is merely .0018% of the value from the August 6, 2014 specimen. Specifically, the report indicates that the normalized level of drug present in August 6, 2014 was "49907" nanograms and the level of drug present in August 18, 2014 was "92" nanograms. Respectfully, this is a *significant and meaningful* decrease contrary to what the Court was led to believe. A reduction in value from 49907 nanograms to 92 nanograms supports exactly what the defense contends: the positive result on August 18 was exclusively a result of the decreasing residual presence of cocaine in Mr. Bosch's system.

29. The report also recognizes that Benzoylecgonine, the cocaine metabolite, "**normally** has a urine half-life of 7.5; **however, heavy use has resulted in a longer detection time in the urine.**" (emphasis added). The report claims to base its conclusion on "chronic use;" yet, the report utilizes the **normal**—not chronic or heavy use—urine elimination half-life of 7.5 hours. A longer detection time and larger urine half-life of chronic use again supports the defense

Lewis Tein PL
ATTORNEYS AT LAW
3059 GRAND AVENUE, SUITE 340, COCONUT GROVE, FLORIDA 33133

position—the August 18th positive test result is indicative of a declining presence of prior, residual use, not new use.

### REQUEST TO REINSTATE BOND

30. The purpose of bail is to secure the presence of the defendant. *See United States v. Rose*, 791 F.2d 1477, 1480 (11th Cir. 1986) (citations omitted). It is not to punish the defendant. *See id.* (citations omitted).

31. Mr. Bosch voluntarily sought private outpatient treatment to address his addiction and substance abuse issues. He was honest in disclosing his drug problem to PTS. He indicated to PTS that several drug tests would likely be positive, though declining concentrations for the presence of cocaine as his system relieves the drug from his body. He should not be punished for that honest and voluntary disclosure. More importantly, the eleven negative drug tests indicate progression—not a regression or relapse.

32. Prior to the October 6, 2014 hearing, PTS and the government initially recommended no judicial action to be taken to afford Mr. Bosch the opportunity to continue his drug counseling and treatment.

33. At the October 6, 2014 hearing, neither party recommended the revocation of Mr. Bosch's bond.

34. In light of the self-contradicting toxicology report and the progression of Mr. Bosch's substance abuse counseling, Mr. Bosch respectfully requests the reinstatement of a bond. A reasonable bond with special conditions of release will satisfy the requirements of 18 U.S.C. § 3142, that is, a reasonable bond with special conditions will assure the safety of the community and Mr. Bosch's continued appearance in court.

35. Additionally, in light of Mr. Bosch's desire to deal with his substance abuse issue,

he respectfully proposes that the Court impose a special condition requiring him to reside at a private residential treatment facility that specializes in substance abuse counseling and treatment for drug addiction. Specifically, the defense has located a private residential treatment facility. Since Mr. Bosch has been the subject of multiple threats, he would request the opportunity to disclose same to the Court and PTS under seal. Suffice it to say that the secure facility is located within the Southern District of Florida and provides a day and night treatment program with community housing, individualized treatment, and recovery-based services 24 hours a day, seven days a week.

36. The undersigned counsel has supplied this motion to the government and discussed the relief sought herein. Senior Litigation Counsel, Michael "Patrick" Sullivan, indicated that the government does not object to the relief requested.

WHEREFORE, Defendant, Anthony Bosch, respectfully requests this Court to reinstate bond and requests a bond hearing.

Respectfully submitted,

LEWIS TEIN, P.L.
*Counsel for Anthony Bosch*
3059 Grand Avenue, Suite 340
Coconut Grove, Florida 33133
Tel: (305) 442 1101
Fax: (305) 442 6744

By: */s/ Guy A. Lewis*
GUY A. LEWIS
Fla. Bar No. 623740
lewis@lewistein.com
MICHAEL R. TEIN
Florida Bar No. 993522
mtein@lewistein.com

Case No. 14-20555-CR-GAYLES

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 7, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the following service list via transmission of Notices of Electronic Filing generated by CM/ECF.

          */s/ Guy A. Lewis*
          GUY A. LEWIS

**SERVICE LIST**

Michael P. Sullivan, Esq.
U.S. Attorney's Office
99 N.E. 4th Street
Miami, Florida 33132

Sharad Anand Motiani, Esq.
United States Attorney's Office
99 NE 4th Street
Miami, FL 33132

Lewis Tein PL
ATTORNEYS AT LAW

3059 GRAND AVENUE, SUITE 340, COCONUT GROVE, FLORIDA 33133