```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                           MIAMI DIVISION
                  CASE NO. 14-20555-CR-GAYLES


UNITED STATES OF AMERICA,           Miami, Florida

              Plaintiff,            October 6, 2014

       vs.                          9:30 a.m. to 10:00 a.m.

ANTHONY PUBLIO BOSCH,

              Defendant.            Pages 1 to 12
_____


                       SHOW CAUSE HEARING
            BEFORE THE HONORABLE DARRIN P. GAYLES,
                  UNITED STATES DISTRICT JUDGE


APPEARANCES:


FOR THE GOVERNMENT:       MICHAEL SULLIVAN, ESQ.
                          ASSISTANT UNITED STATES ATTORNEY
                          99 Northeast Fourth Street
                          Miami, Florida 33132


FOR THE DEFENDANT:        GUY LEWIS ESQ.
                          LEWIS TEIN, PL
                          3059 Grand Avenue
                          Suite 340
                          Coconut Grove, Florida 33133

FOR U.S. PROBATION:       Laura Estevill


REPORTED BY:              PATRICIA DIAZ, RPR, FPR
                          Official Court Reporter
                          United States District Court
                          400 North Miami Avenue
                          Tenth Floor
                          Miami, Florida 33128
                          (305) 523-5178
```

```
 1              (Call to the order of the Court)
 2         THE COURT:  All right.  Please be seated.
 3         COURTROOM DEPUTY:  Calling USA versus Anthony Publio
 4    Bosch, case number 14-CR-20555.
 5         Counsel, please state your appearance for the record.
 6         MR. SULLIVAN:  Good morning, Your Honor.  On behalf of
 7    the Government, Michael Patrick Sullivan and Sharad Motiani.
 8         MR. LEWIS:  Good morning, Judge, Guy Lewis here with
 9    Mr. Bosch, who is present.
10         THE COURT:  All right.  Good morning.
11         THE PROBATION OFFICER:  Laura Estevill from the Federal
12    Probation Office.
13         THE COURT:  All right.  Please be seated.  We are here
14    for a show cause hearing.  I received a memo from probation,
15    which indicated the defendant had positive urine specimens on
16    August 6th and August 18th of this year for the presence of
17    cocaine, and I wanted to see where we are.
18         Let me hear first from probation.
19         THE PROBATION OFFICER:  Yes, Your Honor.  I am required
20    to report all positive urine test to the Court, which I did.
21    Since we were having this hearing, I went ahead and got an
22    Alere opinion from the national lab regarding those two
23    positives.
24         Back when I wrote this report, the reason I wrote it as
25    a violation, it was my opinion that he had reused prior to
```

```
 1   August 18th because of the time span between the first positive
 2   and the second.
 3            The defendant did report to me when I met with him that
 4   he was a daily cocaine user for the previous four years up
 5   until August 5th, before he was released on supervision.
 6            So the first test I would have considered residual
 7   elimination, but my concern was a second positive, which was
 8   12 days later.
 9            I obtained his position through counsel that they felt
10   that it was residual -- also either a false positive or
11   residual elimination because he had been a chronic user.  I did
12   not request any action, Your Honor, because usually when
13   people -- it's not uncommon that somebody who has an addiction
14   problem, they relapse, they use, but we get them in treatment.
15            He had indicated that he was going to commence private
16   treatment through a therapist.  I said that's fine as long as
17   you can produce that documentation to me that you are getting
18   the treatment that you need and that I would continue drug
19   testing him twice weekly to make sure that he was made
20   accountable and that he would give negative specimens.
21            Since that positive on August 18th, he has given
22   several -- he had a total of 13 samples and 11 out of the 13
23   are negative.  So all the tests after August 18th, August 21
24   through September 30th, have tested negative.
25            THE COURT:  And did you receive those documents that
```

```
 1   you requested regarding verification of his treatment?
 2              THE PROBATION OFFICER:  I received them just this
 3   Friday.  I was working out of another office and I got them off
 4   of my fax machine this morning.  And, yes, he is going.
 5   However, my concern is, they listed his attendance as
 6   unsatisfactory.  He was a no show to his appointment with no
 7   call on September 18.
 8              He cancelled at the last minute on September 26th, and
 9   on October 3rd he forgot about his appointment and he arrived
10   45 minutes late.  They indicated his participation is excellent
11   when he is going to treatment, and they do require or recommend
12   that he see the therapist twice weekly for treatment.
13              Their prognosis is guarded, but, you know, they are
14   working with him.  His access one diagnosis is cocaine
15   dependence and alcohol abuse.  And there is also -- it looks
16   like he is being encouraged also to attend NA and AA meetings.
17              THE COURT:  Okay.
18              THE PROBATION OFFICER:  If I could just interject, Your
19   Honor, the Alere opinion letter I received, which I would like
20   to give you a copy, dated September 30th, it is their opinion
21   that the donor reused cocaine prior to the collection of
22   August 18th.  They base their opinion on chronic use, the lack
23   of significant decrease in the normalized level of drug present
24   in the urine specimen collected on that day, the length of time
25   the donor continues to test positive after the specimen
```

```
 1   collected on -- you know, 12 days.  So they are basing their
 2   opinion that he reused because the levels did not decrease in
 3   the time frame in which they believe it should have decreased.
 4           THE COURT:  All right.  Thank you.
 5           The Government's recommendation?
 6           MR. SULLIVAN:  Your Honor, the Government is concerned
 7   about the defendant's use of cocaine, actually.  I point out
 8   that we were aware of his abuse problem during the time that we
 9   were investigating him and his co-conspirator prior to the
10   return of the indictment and his arrest, which was August 5th.
11           Mr. Bosch signed a cooperation agreement with the
12   United States prior to August 5th, some months before
13   August 5th, probably as early as March 2014.  We impressed upon
14   him at the time that we expected any use of cocaine to be
15   terminated and full cooperation and obeying the laws of the
16   United States and the State of Florida.  And it's very
17   disappointing to the Government that he has come up with these
18   positive tests.  It may just conclude that -- though we don't
19   know, a reasonable person might conclude that he was using
20   drugs during the time that he was supposed to be fully
21   cooperating with the Government, and that's a great concern to
22   us that he would do that.
23           We are pleased to hear that this probation officer
24   seems to have the situation well in hand, and there are
25   solutions that the probation officer has proposed.  We think
```

```
 1   that more frequent testing would be applicable, and perhaps --
 2   and I have discussed it with the probation officer, posing some
 3   kind of curfew, nighttime curfew on Mr. Bosch.
 4          There might be some complications that the probation
 5   officer was more familiar with than I was.  But we know from
 6   our investigation Mr. Bosch was one who liked to party.  He
 7   liked the South Beach clubs and he liked to spend a lot of time
 8   outside at night with friends.  And I am sure that's why he
 9   hasn't been able to get his abuse of cocaine under control.  So
10   we thought that a nighttime curfew would, one, make the point
11   that he is under restrictions, that there are provisions that
12   he must comply with.  And this would certainly be a way that we
13   could -- hopefully we would know that he is not going to those
14   South Beach clubs.
15          The probation officer explained there might be some
16   complications with that of whether or not an ankle bracelet
17   might be necessary to really enforce that, but I think we could
18   at least try it out without the ankle bracelet first because we
19   will know if he is out there and people are seeing him.  He is
20   sort of a well-known figure in South Florida at the present
21   time.  If he is out partying, the Government will hear about
22   it.
23          THE COURT:  Okay.  Mr. Lewis.
24          MR. LEWIS:  Judge, we have no objection to a curfew of
25   9:00 p.m. to a reasonable hour in the morning.  That's not the
```

```
 1   issue.  Truly, it's not.  The issue is not that he is out.
 2   They've got no evidence he is out partying.  Nobody has any
 3   evidence.  I can tell you he is not out on South Beach.  The
 4   man has been subject to threats.  He has been followed.  His
 5   family has been followed.  Security is a real concern.  They
 6   know that.  The last thing he is doing is out being notorious
 7   in South Florida.
 8           He does have a drug problem, though, and he is
 9   addressing it.  He is addressing it through medical care and
10   through treatment.
11           I will point out, Your Honor, that since the positive
12   test, which occurred literally days when he was first tested
13   after he was arrested, which I would -- I would argue that is
14   normal residual cocaine levels that are decreasing.
15           What's important to me, Judge, is after that initial
16   positive or that positive that we are here for as a result of
17   the indication from probation, negative on the 21st from
18   probation office, negative on the 25th, negative on the 2nd of
19   September, negative on the 5th of September, negative on the
20   12th of September, negative on the 5th, which I think was the
21   date of memo from our probation officer.
22           Also, since then, Judge Gayles, negative on
23   September 19th, negative on September the 25th, negative on
24   September the 26th.  So these are all reports from the
25   probation office where he is being tested.  It's being sent.
```

```
 1   It's being evaluated and they have come back with zero presence
 2   of any controlled substance in his urine.
 3           I would also indicate that, frankly, the report that we
 4   just received from his doctor, he is receiving professional
 5   medical care from a recognized expert in the South Florida
 6   area, and the doctor indicates -- and we don't take -- frankly,
 7   the doctor indicates in his report that Tony, Mr. Bosch, needs
 8   to be more consistent in his attendance.  And I recognize that,
 9   Judge.  He does.  He recognizes that he is committed to it.
10           I will say, as a footnote, Judge, he has recently had a
11   brand new baby child, three months old.  He's got other kids
12   from another marriage.  He's got parents.  And I am not saying
13   that as an excuse, but I am saying that the man has got a lot
14   of pressure on him right now.  And he is doing the very best he
15   can to juggle this, his home life, trying to work with the
16   newspaper articles, trying to continue to cooperate.  In fact,
17   we got a meeting with the U.S. Attorney's Office after this if
18   Your Honor sees fit.  So he has a lot of pressure on him right
19   now.
20           He knows that he has to testify in trials that are
21   upcoming.  So I would point out, Judge Gayles, that neither
22   probation nor the U.S. Attorney's Office -- while not the be
23   all end all, certainly Your Honor is the be all, end all --
24   neither are recommending modification.  Neither are
25   recommending -- or at least Mr. Sullivan, as of last Friday,
```

```
 1   wasn't recommending any modification.  I will agree to the
 2   curfew if that's what Your Honor thinks appropriate, and
 3   neither are recommending revocation.
 4          So, I would say, Your Honor, that we recognize the
 5   severity.  We recognize what he has to do.  He is committed to
 6   doing this.  He is committed to his treatment, and he is trying
 7   to get through this.
 8          THE COURT:  All right.  You know, the positive, two
 9   positive drug tests 12 days apart are significant in and of
10   themselves.  The defendant, prior to today's hearing, was given
11   an opportunity to seek treatment on his own, and what I learned
12   today is that he is not even complying with that voluntary
13   treatment.  In determining whether or not the defendant remains
14   out, I have to be confident that he is going to show up when
15   required in court and comply with all the conditions of his
16   bond.  And, you know, I appreciate your argument, Mr. Lewis,
17   but the pressure on the defendant I don't find to be a
18   mitigating factor.  In fact, a person that is a daily user of
19   cocaine -- which was reported by him to probation -- at least
20   on a daily basis over the past four years, I don't find he is a
21   good candidate to remain out on bond.  So I am going to remand
22   the defendant into custody.
23          I find that no conditions or a combination of
24   conditions are sufficient to secure the Court that the
25   defendant will appear in court as directed.  And I base my
```

```
 1   finding on both the two positive urine specimens for cocaine on
 2   August 6th and August 18th of 2014, the presence of cocaine,
 3   the defendant's daily use of cocaine at least for some period
 4   of time until after his last positive examination and his
 5   noncompliance with treatment, which he has failed to appear in
 6   scheduled treatment and at least on one occasion he has
 7   appeared 45 minutes late.  So I am going to remand the
 8   defendant into custody based on that finding.
 9            MR. LEWIS:  Your Honor, may I?
10            Not to reargue the position, but I'm not sure how much
11   weight you're placing on his last test.  There is, apparently,
12   a report that we have not received that the pretrial services
13   officer has made reference to.  We have not received it.
14            Five minutes before the hearing today I was told about
15   it.  I am not sure how much reliance Your Honor is placing upon
16   it, but I think we should get an opportunity to review that.
17            I would ask Your Honor to set it for a hearing in order
18   that we could, you know, have a position on this.
19            THE COURT:  All right.  Well, what I will do -- the
20   specific report that was just handed to the attorneys, can you
21   identify it for the Court?
22            THE PROBATION OFFICER:  Yes, Your Honor.  This is a
23   toxicology report.  The opinion letter from Alere Toxicology
24   Services is dated September 30th.  I can give a copy to the
25   prosecutor as well.  I wanted Your Honor to direct me to give
```

```
 1   these to them before I did so.
 2          THE COURT:  Please provide that.
 3          I am going to remand the defendant today, but based on
 4   the report, you can certainly request an additional hearing
 5   based on his bond status after you have reviewed the report.
 6   But the daily use plus the two positives, plus what -- it
 7   sounds like you're agreeing the defendant didn't comply with
 8   the treatment as directed.
 9          MR. LEWIS:  Judge, I --
10          THE COURT:  I simply have no confidence in his ability
11   to appear as directed and -- but you will have a chance to file
12   a new motion, and I will reconsider it based on whatever you
13   find.
14          MR. LEWIS:  Judge, would you consider allowing him to
15   turn himself in this evening at 5:00 p.m.?
16          THE COURT:  No, sir, I'm sorry, not under these
17   circumstances.
18          All right.  We will be in recess on this case.
19          COURT SECURITY OFFICER:  All rise.
20          (Hearing concluded at 9:48 a.m.)
21
22
23
24
25
```

```
 1                    C E R T I F I C A T E

 2

 3          I hereby certify that the foregoing is an

 4    accurate transcription of the proceedings in the

 5    above-entitled matter.

 6

 7
      October 14, 2014    /s/Patricia Diaz
 8    DATE                PATRICIA DIAZ, RPR, FPR
                          Official Court Reporter
 9                        United States District Court
                          400 North Miami Avenue, Tenth Floor
10                        Miami, Florida 33128
                          (305) 523-5178
11

12
```